IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
AUGUST SESSION, 1999

FILED

October 19, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,          *
                             *      No. 01C01-9810-CR-00442
         Appellee,           *
                             *      DAVIDSON COUNTY
vs.                          *
                             *      Hon. Frank G. Clement, Jr., Judge
BLAINY D. ZACHARY,           *
                             *      (DUI, third offense; Driving on Revoked
         Appellant.          *


For the Appellant:

**Samuel E. Wallace, Jr.**
Wallace & Wallace
Attorneys
227 Second Avenue North
Nashville, TN  37201

For the Appellee:

**Paul G. Summers**
Attorney General and Reporter

**Elizabeth T. Ryan**
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493

**Victor S. Johnson III**
District Attorney General

**Edward S. Ryan**
Asst. District Attorney General
Washington Square, Suite 500
222-2nd Avenue North
Nashville, TN  37201-1649


OPINION FILED: _____

AFFIRMED


**David G. Hayes**
Judge

## OPINION

The appellant, Blainy D. Zachary,[1] was indicted by a Davidson County Grand Jury for the offenses of driving under the influence, third offense, and driving on a revoked license. The appellant proceeded to trial, and, after the jury was impaneled and the indictment read, pled guilty to driving on a revoked license. The trial continued and the jury found the appellant guilty of driving under the influence, third offense. The trial court sentenced the appellant to 11 months, 29 days, suspended except for 180 days for the DUI conviction, and 11 months, 29 days, suspended except for 45 days for the driving on revoked conviction. These sentences were ordered to be served concurrently. In his sole issue on appeal, he contends that the prosecutor's comments during closing argument constitute prosecutorial misconduct requiring reversal of his DUI conviction.

After review of the record, we affirm the judgment of the trial court.

### Background

On November 23, 1996, Metro Police Officer William Turbeville was on patrol, "assigned to the west sector of Nashville." At approximately 2:20 a.m., Officer Turbeville was traveling eastbound on Charlotte Pike when he "observed a car come out of Old Hickory Boulevard . . . . The vehicle made a wide left turn onto Charlotte going eastbound . . . and seemed to be traveling at a high rate of speed. . . ." He estimated that the vehicle was "doing approximately 60 miles per hour." As Officer Turbeville was following the speeding vehicle, "[t]he vehicle swerved off the -- roadway . . . [and] almost hit [within two to three feet]. . . a light or telephone pole,

---

[1]It appears from the style of the briefs and all of the documents in the record with the exception of the indictment that the appellant's name is correctly spelled Blainey D. Zachary. The indictment, however, lists the appellant's name as Blainy D. Zachary. It is the policy of this court to style cases according to the name in the formal charging instrument.

and then swerved back to the roadway." Upon witnessing this incident, Officer Turbeville initiated a traffic stop.

Officer Turbeville approached the vehicle and observed the appellant in the driver's seat accompanied by a female in the passenger's seat. He proceeded to inform the appellant of the nature of the stop, during which time, he "detected an extreme odor of alcohol emitting from his person." When questioned by the officer, the appellant admitted that "he had a couple of beers" that evening. During this initial confrontation, Officer Turbeville noticed that the appellant's "speech was slurred, his eyes were watery, bloodshot, his clothing was disarranged." Officer Turbeville also observed "two empty 12 ounce Budweiser bottles, . . . four empty Budweiser cans, and . . . four full 12 ounce bottles of beer" in the appellant's vehicle. He asked the appellant to step out of his vehicle and proceeded to administer a series of field sobriety tests, including "the walk and turn test" and "the one legged stand test." The appellant failed to perform satisfactorily on these tests and was placed under arrest for DUI.

A standard check of the appellant's status revealed that his driver's license had been revoked. After transporting the appellant to the police department, Officer Turbeville informed the appellant of the State's implied consent law and requested that he submit to a blood alcohol test. The appellant refused to take the breath test.

At trial, in his own defense, the appellant testified that, on the date of his arrest, he had worked an eleven hour day repairing automobile transmissions. When he got off work, he went to his apartment where he took a shower and watched television. While watching television, the appellant consumed two beers. He later fell asleep at approximately 11:00 pm. The appellant was awakened by a telephone call from his friend, Heather Henson. She was upset from an argument that she had with her date and asked the appellant if he would pick her up at the

3

Crows Nest. The appellant agreed, despite the fact that his driver's license had been revoked. On cross-examination, the appellant admitted that, although his license had been revoked, he did drive to and from work and would, if necessary, run errands for his children.

The appellant further explained that he proceeded to the Crows Nest where he picked up his friend. On the way back, Heather lit a cigarette in the car and, at some point, she dropped the cigarette. When the appellant reached to retrieve the burning cigarette, his vehicle swerved off the road. This incident occurred immediately prior to his being pulled over by Officer Turbeville. The appellant asserted that he was not under the influence of alcohol at this time. He explained his poor performance on the field sobriety tests as the result of his "being goofy" because he was not drunk and the officer should have known that he was not drunk.

Based upon this evidence, the jury found the appellant guilty of driving under the influence, third offense.

**Prosecutorial Misconduct during Closing Argument**

In his sole issue on appeal, the appellant contends that "arguments in closing summation by the prosecutor in this case was [sic] sufficient prosecutorial misconduct to lead to an arbitrary and unreliable sentence of guilt in violation of Article I, Section 8 and Article I, Section 16 of the Tennessee Constitution." Specifically, he complains of one sentence of the prosecutor's argument:

> As we already know he was driving -- routinely drove a car while he had a revoked driver's license and total disregard for the law.

4

Indeed, he supports his allegation that he was denied a fair trial by evidence that the jury only deliberated between three and five minutes.[2]

Initially, we acknowledge the State's position that the appellant has waived appellate review of this issue for failure to enter an objection during closing argument. The failure to object contemporaneously constitutes a waiver of the issue pursuant to Tenn. R. App. P. 36(a). Notwithstanding waiver, we proceed to address the issue on its merits.

Our supreme court has recognized that closing argument is a valuable privilege for both the State and the defense and that counsel is afforded wide latitude in presenting final argument to the jury. See State v. Cribbs, 967 S.W.2d 773, 783 (Tenn.), cert. denied, -- U.S.--, 119 S.Ct. 343 (1998); State v. Cone, 665 S.W.2d 87, 94 (Tenn.), cert. denied, 467 U.S. 1210, 104 S.Ct. 2400 (1984). In order for a defendant to be granted a new trial on the basis of improper comments during closing argument, he must show that the argument was so inflammatory or the conduct so improper that it affected the verdict to his detriment. See Harrington v. State, 385 S.W.2d 758, 759 (Tenn. 1965). Factors to be considered in making this determination include:

> 1) The conduct complained of viewed in context and in light of the facts and circumstances of the case;
>
> 2) the curative measures undertaken by the court and the prosecutor;
>
> 3) the intent of the prosecutor in making the improper statement;
>
> 4) the cumulative effect of the improper conduct and any other errors in the record; and
>
> 5) the relative strength or weakness of the case.

Judge v. State, 539 S.W.2d 340, 344 (Tenn.Crim.App.1976); see also State v. Buck, 670 S.W.2d 600, 609 (Tenn.1984).

---

[2]At the motion for new trial, the trial court acknowledged that the jury only deliberated for ten minutes before returning a verdict.

5

Regarding the challenged portion of the prosecutor's argument, a review of the record reveals the following:

1) The appellant pled guilty to the charge of driving on a revoked license after the jury had been sworn and the charge had been read but prior to opening argument;

2) During opening argument, defense counsel stated "Mr. Zachary was in the wrong, and he's come here before you today and he admitted he was in the wrong. He should not have been driving the car because his license was not valid at that time. He admits that.";

3) On cross-examination by the State, the appellant admitted that he knew that his license was revoked yet he continued to drive to and from work and whenever his children needed something;

4) Prior to closing argument, the trial court advised the jury, "[p]lease recall what they say to you in closing statements is not evidence, but it is helpful because they can summarize the facts as they heard it . . . .";

5) The prosecutor's comment was made in the context of labeling the issue before the jury as one of credibility between the police officer, "who is out doing his job," and the appellant, who is "on trial not wanting to go to jail";

6) Defense counsel, in his closing argument, also addressed the issue before the jury as one of credibility;

7) In its charge to the jury, the trial court instructed ". . .closing arguments of the attorneys are intended to help you in understanding the evidence and the law, but they are not evidence. If statements were made by an attorney that are not supported by the evidence, you should disregard those statements."; and

8) At the motion for new trial, the trial court found that the prosecutor's comments regarding the appellant's admission of driving while his license was revoked went to the issue of credibility and not to show that the appellant "had a plethora of criminal record."

It is clear from the record before us that the prosecutor was not using the appellant's history of driving on a revoked license as proof of the appellant's guilt, but rather as proof against his credibility.[3] See State v. Ronnie Roberts, No. 03C01-9502-CR-00049 (Tenn. Crim. App. at Knoxville, May 20, 1996), perm. to appeal denied, (Tenn. Nov. 4, 1996) (citing State v. Hardison, 705 S.W.2d 684, 687 (Tenn. Crim. App. 1985)). Such use has been determined to be appropriate. Id.

---

[3]We acknowledge that, typically, an objection made to a prosecutor's statement similar to the one in the present case would be sustained based upon a lack of relevance. However, in this case, the appellant interjection of the credibility issue during the course of the trial justified the prosecutor's remarks during closing argument.

Moreover, any objection to the use of the appellant's prior conviction in closing argument is unjustified as it was the appellant himself who introduced the evidence of which he now complains. See Tenn. R. App. P. 36(a). Accordingly, we conclude that the prosecutor's comment of the appellant's "viola[tions] of the law at will" does not serve as a basis for a new trial when measured by the test established in Judge. This issue has no merit

The judgment of the trial court is affirmed.

_____
DAVID G. HAYES, Judge

CONCUR:

_____
JOE G. RILEY, Judge

_____
L. T. LAFFERTY, Senior Judge